I must respectfully dissent from the majority as they incorrectly conclude that a city's failure to warn of a known dangerous condition is governed by Nathaniel v. City of MossPoint, 385 So.2d 599 (Miss. 1980). The failure to adequately warn the public of a dangerous condition in the road is instead a proprietary function of the municipality. Moreover, the record demonstrates there was sufficient evidence to create a factual dispute as to whether the sharp curve adjacent to a deep ravine constituted a dangerous condition. Because the existence of a dangerous condition and whether a warning sign would have constituted proper maintenance of the road are issues which must be resolved by a jury, the trial court erroneously granted summary judgment.
In Nathaniel, this Court stated that the maintenance and repair of streets in Mississippi was a proprietary function, but distinguished the initial placement of traffic control devices such as stop signs or traffic lights as being a governmental function. 385 So.2d at 601. The complaint in the case at hand presents the issue of a municipality's duty to warn of known dangerous conditions. The failure to warn of a known dangerous or unusual condition in the road, or within reasonable proximity of the road such that it presents a likelihood of injury to those using the road in an ordinary manner, falls in the category of maintaining and repairing defective conditions of the road.Chinevere v. Cullman County, 503 So.2d 841, 842 (Ala. 1987);Gordon v. City of West Palm Beach, 321 So.2d 78, 80 (Fla. 1975); Mayor and City Council of Baltimore v. Seidel,44 Md. App. 465, 409 A.2d 747, 751 (1980); City of Pasadena v.Freeman, 731 S.W.2d 590, 593-94 (Tex. 1987); see generally
McQuillan, Municipal Corporations, § 54.90 (3d. ed. Cum Supp. 1993).
The maintenance and repair of streets constitutes a proprietary or corporate function for which a municipality may be held liable if done negligently. Nathaniel, 385 So.2d at 601; see Andersonv. Jackson Mun. Airport Auth., 419 So.2d 1010, 1014-15 n. 2 (Miss. 1982) (creation of dangerous situation regarding trees near sidewalks, streets, or neutral areas); White v. Thomason,310 So.2d 914, 916 (Miss. 1975) (maintenance of traffic lights);Tucker v. City of Okolona, 227 So.2d 475, 476 (Miss. 1969) (same); Bishop v. City of Meridian, 223 Miss. 703, 79 So.2d 221
(1955) (maintenance of streets); City of Vicksburg v.Harralson, 136 Miss. 872, 101 So. 713 (1924) (maintenance of "bumpers' in streets).
In reaching its conclusion that the placement of traffic control devices was a governmental function, the Nathaniel
Court determined that the city's failure to place a stop sign at an intersection did not necessarily render the intersection more dangerous than any other intersection used by persons exercising ordinary care and caution. 385 So.2d at 602. To the contrary, the existence of the deep ravine flowing next to an extremely sharp curve in the roadway created a factual dispute as to whether the roadway in this case was uncommonly dangerous. It was alleged that in the absence of a warning sign, the sharp curve would naturally lead an automobile into the deep ravine adjacent to the roadway even though a driver used ordinary care in attempting to negotiate the curve. Six different accident reports involving the same curve evidenced a condition in the road so unusual that a driver using ordinary care might still fail to negotiate it. The decision to place a sign warning of such a condition is fundamentally different when the condition is dangerous to the driver using ordinary care. See City of Jackson v. Locklar,431 So.2d 475, 479 (Miss. 1983) ("A municipality is under the duty to exercise reasonable care to keep its streets reasonably safe for those using them with reasonable care"); see also Bishop v. Cityof Meridian, 223 Miss. 703, *Page 1319 
711, 79 So.2d 221, 223 (1955) (city is liable in tort for negligent failure to maintain streets "in such condition as not to endanger the safety of the public in the proper use thereof").
In addition to showing the existence of a defect, a "plaintiff must go further and show that the city had actual or constructive knowledge of the defect." Locklar, 431 So.2d at 480. With the accident reports offered by King, she successfully presented evidence sufficient to create a factual dispute as to the City's knowledge of the dangerous condition. See White, 310 So.2d at 917 (proof of constructive notice is sufficient to present jury question as to city's knowledge of defect).
Where a municipality has notice of a dangerous defect, remedying such a condition is more akin to the City's proprietary function of maintaining its streets in a reasonably safe condition as opposed to its governmental function of controlling traffic flow. Consequently, the City of Jackson should not enjoy sovereign immunity from the present claim. Whether the street was properly maintained without a warning sign and whether a warning sign would have cured this unusually hazardous condition are issues which should be resolved by a jury. Accordingly, I dissent.
BANKS, J., joins this opinion in part.