IN THE SUPREME COURT OF MISSISSIPPI
NO. 97-CT-01413-SCT

*HEMPHILL CONSTRUCTION COMPANY, INC.*

*v.*

*CITY OF LAUREL, MISSISSIPPI*

<u>**ON WRIT OF CERTIORARI**</u>

| | |
|---|---|
| DATE OF JUDGMENT: | 10/20/97 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DAVID MOCKBEE |
| | MARY E. HALL |
| ATTORNEYS FOR APPELLEE: | WILLIAM S. MULLINS |
| | DEIRDRE D. JONES |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 5/4/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/25/2000 |

**EN BANC.**

**BANKS, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This case presents the issue whether allowing a bidder to amend its bid price after bids are opened to correct an error not readily apparent on the face of the bid is such a deviation from the statute's public purchase procedure as to render the action unlawful. We hold that it is. Accordingly we reverse and render the judgments of the Court of Appeals and the Jones County Circuit Court.

**I.**

¶2. The City of Laurel awarded a public construction contract to Harold West Contractors, Inc. ("West"). Hemphill Construction Company, Inc. ("Hemphill") also submitted a bid on the project, and complained that West was allowed to amend its bid price after bids were opened. Hemphill filed a bill of exceptions in Jones County Circuit Court to appeal the City's decision. The circuit court affirmed the City's decision to award the contract to West. On Hemphill's appeal, the Court of Appeals affirmed the judgment of the circuit court.

¶3. Hemphill petitioned this Court for a writ of certiorari. We granted certiorari because this case is one of first impression and involves the procedures for awarding public contracts, a matter of broad public importance. Because the actions of the City are not authorized by the controlling statute, we are compelled to reverse the decision of the Court of Appeals.

## II.

¶4. The governing authorities of the City of Laurel decided to build a complex of facilities for youth baseball, softball and soccer fields. The City began advertising in July of 1997 for competitive sealed bids for construction of the facilities. The controlling statute for this process is Miss. Code Ann. § 31-7-13 which read, in pertinent part and at the time in question, as follows:

> All agencies and governing authorities shall . . .contract for public construction as herein provided.

> (c) Purchases. . .may be made from the lowest and best bidder after advertising for competitive sealed bids . . . however, if the purchase involves a construction project in which the estimated cost is in excess of Ten Thousand Dollars ($10,000.00), such bids shall not be opened in less than fifteen (15) working days after the last notice is published and the notice for the purchase of such construction shall be published once each week for two (2) consecutive weeks. The notice of intention to let contracts or purchase equipment shall state the time and place at which bids shall be received

> . . . .

> (d)(i) Purchases may be made from the lowest and best bidder. . . If any governing authority accepts a bid other than the lowest bid actually submitted, it shall place on its minutes detailed calculations and narrative summary showing that the accepted bid was determined to be the lowest and best bid, including the dollar amount of the accepted bid and the dollar amount of the lowest bid. No agency or governing authority shall accept a bid based on items not included in the specifications. . . .

> (o) No contract. . .as herein authorized shall be made for the purpose of circumventing the provisions of this section requiring competitive bids . . . .

¶5. Sealed bids were opened by the City on August 15, 1997, in the presence of a representative of West and others. The two lowest bids received by the City were as follows:

> Harold West Contractors, Inc. - $1,579,400

> Hemphill Construction Company, Inc. - $1,999,990

¶6. It appears that less than an hour before the sealed bids were opened, West discovered that a computer data entry error had been made by one of its employees. This error was not apparent from West's bid document. Because of the error, West's intended bid was $300,823 (or, 19%) more than the bid it submitted for opening. West apparently made an unsuccessful attempt to report the error before bids were opened. In any event, within an hour after the bids were opened West faxed to the City a letter which requested that it be allowed either to withdraw or amend its bid.

¶7. The City took the matter under advisement. West would still be the low bidder if allowed to amend its bid, but the gap between its bid and Hemphill's bid would be narrowed to approximately $120,000. The City authorities considered, among other sources, the provisions of the *Mississippi Procurement Manual*, published by the Office of Purchasing and Travel in the State Department of Finance and Administration. Although the *Mississippi Procurement Manual* governs contracts by state agencies and would not be controlling, the City found support in its provisions. The City did not seek an opinion by the State's

Attorney General, as authorized by Miss. Code Ann. § 7-5-25 (Supp. 1999). By resolution of September 16, 1997, the City approved West's bid as amended, and West was awarded the contract.

¶8. Hemphill, proceeding under Miss. Code Ann. § 11-51-75 (1972), filed a bill of exceptions with the Jones County Circuit Court. Hemphill asserted that the City's actions violated the public bid laws and argued that West's only remedy for its bid error in these circumstances was bid withdrawal. Hemphill requested the circuit court to direct the City to allow West to withdraw its bid and to award the contract to Hemphill.

¶9. The circuit court affirmed the City's action by applying a deferential standard of review. Under this standard, the circuit court determined that it could not reverse the City if its action was fairly debatable and not arbitrary and capricious. *See, e.g.,* *Sunland Pub. Co. v. City of Jackson*, 710 So.2d 879, 881-82 (Miss.1998).

¶10. The Court of Appeals likewise applied the deferential standard of review in affirming the circuit court. In addition, the Court of Appeals found support for the City's action in prior decisions by this Court which have applied principles of equity and contract law in allowing bidders on public contracts to withdraw their bids on discovery of bid error. *Mississippi State Bldg. Comm'n v. Becknell Constr., Inc*., 329 So.2d 57, 60 (Miss. 1976); *City of Hattiesburg v. Cobb Bros. Constr. Co.*, 183 Miss. 482, 184 So. 630 (1938). The Court of Appeals further noted that we have recognized that public authorities are allowed some discretion in determining the lowest and best bid. *Canton Farm Equipment, Inc. v. Richardson*, 501 So.2d 1098, 1104 (Miss. 1987).

## III.

### a.

¶11. Our analysis begins with a determination of the scope of review. Municipalities have only such powers as are expressly granted or necessarily implied by statutes. Such powers are to be construed most strongly against an asserted right, if the right is not clearly given. *City of Jackson v. McMurry*, 288 So.2d 23 (Miss. 1974); *City of Jackson v. Freeman-Howie, Inc*., 239 Miss. 84, 93-94, 121 So.2d 120, 123 (1960).

¶12. The public bid laws do not expressly provide for the action taken by the City in this case, and the question becomes whether such action is necessarily implied. Only if the City's action was necessarily implied by statute is the City's action entitled to deference.

### b.

¶13. It is true that this Court has recognized that governing authorities have a measure of discretion in awarding public contracts. The discretion exists, however, only where it is supported by statute. Where, for example, the law allows the governing authority to determine the "lowest and best bidder," it is permissible for factors other than price to be considered. *Parker Bros. v. Crawford*, 219 Miss. 199, 68 So.2d 281 (1953).

¶14. It is also true that bidders for public contracts have been allowed, in limited circumstances, to withdraw bids containing errors. But those cases, *Becknell* and *Cobb, supra,* involve bid withdrawals, not bid amendments, and are limited to their specific facts. Both cases are consistent with general principles of

contract law, which provide that rescission, not reformation, is a remedy for unilateral mistakes in proper circumstances. 17A Am. Jur. 2d *Contracts* § 218 (1991).

¶15. As a general principle this Court has said:

> The purpose of provisions requiring that contracts with public authorities be let only after competitive bidding [is] to secure economy in the construction of public works and the expenditures of public funds for materials and supplies needed by public bodies; to protect the public from collusive contracts; to prevent favoritism, fraud, extravagance, and improvidence in the procurement of these things for the use of the state and its local self-governing subdivisions; and to promote actual, honest, and effective competition to the end that each proposal or bid received and considered for the construction of a public improvement, the supplying of materials for public use, etc., may be in competition with all other bids upon the same basis, so that all such public contracts may be secured at the lowest cost to taxpayers.

*Telcom Sys., Inc. v. Lauderdale County Bd. of Supervisors*, 405 So.2d 119, 120 (Miss.1981) (citing Annotation, *Requirement that Public Contract be Awarded on Competitive Bidding as Applicable to Contract for Public Utility*, 81 A.L.R.3d 979, 981-82, (1977)).

¶16. Our premises are the words of the statute, together with its recognized purpose. The law requires "competitive sealed bids." The purpose of the law is to protect the public by promoting competition so as to prevent fraud, favoritism and the like. These premises negate any inference that a bid can be amended after opening to substantially increase the bid price, and this is especially so where, as here, the error and the intended correct bid are not apparent from the bid document. Therefore, the City acted beyond its powers in awarding the contract to West under the amended bid price.

¶17. The City stresses the fact that West was the lowest bidder both before and after the bid correction. The City argues that the purposes of the bid laws were met in these circumstances. This decision is not intended to impute any culpable wrongdoing by the City of Laurel or West. While the City may be comfortable with its decision in this instance, however, the broader public will lose in the long run if the public purchase laws are circumvented.

### c.

¶18. Finally, the City argues that Hemphill lacks standing to pursue this matter because the decisions of the circuit court and the Court of Appeals allowed work to continue under the City's decision. The construction has been completed during litigation. Further, any damages sought by Hemphill would be speculative, because the City reserved the right in its bid notice to reject all bids.

¶19. While the issue before us may be academic insofar as it affects these parties at this time, the situation here presented is capable of repetition. Parties such as Hemphill might again be unable to have meaningful review of their claims. The issue, therefore, is not moot. *Ex parte Jones County Grand Jury*, 705 So.2d 1308, 1313-14 (Miss. 1997).

### IV.

¶20. Our holding is that the relevant public bid laws do not allow a governing authority to accept a bid price increase after sealed bids are opened, except where the error and the intended correct bid are evident on

the face of the bid document. This ruling is consistent the purpose of the statute. It is also consistent with ¶ 3.202.13.4(2) of the above referenced *Mississippi Procurement Manual.* If a greater degree of deference is to be granted to governing authorities in circumstances such as presented in this case, it should come through legislative enactment. The judgments of the Court of Appeals and the Jones County Circuit Court are reversed and rendered.

¶21. **REVERSED AND RENDERED**.

**PRATHER, C.J., PITTMAN, P.J., McRAE, SMITH, MILLS, WALLER AND COBB, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.**